Frank S. McCullough, J.
This is a motion by the petitioner, New York State Commission for Human Rights, for an order, pursuant to section 298 of the Executive Law, enforcing the order of the New York State Commission for Human Rights, dated January 31, 1968, against the respondents.
It appears that as the result of a hearing held by three Commissioners of the State Commission for Human Rights, the respondents were found to have engaged in unlawful discriminatory practices in violation of section 296 (subd. 5, par. [a], cl. [1]) of the Executive Law by reason of their alleged refusal to rent certain housing accommodations to the complainants because of their color.
The basic issues presented herein are as stated by counsel to the commission:
*920 “ 1. Whether the Commission’s finding that the respondents engaged in unlawful discriminatory practices is supported by substantial evidence on the record considered as a whole.
“ 2. Whether the affirmative action provisions of the Commission’s order constitute a reasonable exercise of the judgment of the Commission to effectuate the purposes of the law.”
The court notes, at the outset, that throughout the proceedings before .the State Commission for Human Eights, the respondents were not represented by counsel. While there is no requirement that a party must be represented by counsel in administrative proceedings, there is no question that by reason of the present day complexities of administrative proceedings the layman who elects to represent himself does so at a peril that is indeed substantial.
However, the court knows of no specific precedent which would nullify these administrative proceedings by reason of the apparent decision by the stockholders, officers and directors of the corporate respondent to proceed without representation by counsel.
The respondent, E. Landau Industries, Inc., was the lessee in full possession and control of a certain building located at 385 McLean Avenue, Yonkers, N. Y., pursuant to a long-term lease. The building contains 83 apartments. The respondent, Emil Landau, was the president and sole stockholder of the corporate respondent. The respondent, John Higgins, was employed by the corporation as the superintendent of the subject building, with authority to show apartments and take applications which would later be referred to the respondent, Landau.
The testimony by the complainants which was obviously accepted as credible by the commission indicates a refusal to rent housing accommodation a to the complainants because of their color, which would further indicate a policy of refusing to rent or lease housing accommodations to Negroes because of their color. The order of the commission, dated January 31, 1968, requires the respondents to cease and desist from refusing to rent housing accommodations to the complainants or any other person because of race or color.
Counsel to the commission correctly states in his brief that the cease and desist provisions of the commission’s order impose no obligation on the respondents other than the requirements of the law itself.
However, the commission’s order also directs affirmative action on the part of the respondents. Paragraphs A (1) and A (2) require the corporate respondent and the respondent, Emil Landau, to sell, rent or lease, and to apply the same standard, *921 terms, conditions and privileges in the rental of all housing accommodations, land or commercial space subject to the law against discrimination. These requirements represent a restatement of the requirements of the law itself. However, counsel for the commission states that at the present, neither .the corporate respondent nor the respondent, Emil Landau, owns any housing rental property. It appears that the respondent, Emil Landau, does own some commercial rental property. Apparently, the commission’s order includes a directive with respect to land and commercial space by reason of the fact that represents the only type of accommodations presently owned by any of the respondents.
Paragraph A (3) requires the corporate respondent, and the respondent, Emil Landau, .to transmit to the commission a report covering the housing accommodations, land and commercial space presently available for sale or rent. Paragraph A (6) requires the said respondents to maintain records for inspection by the commission for a period of one year.
Paragraph A(4) requires the corporate respondent and the respondent, Emil Landau, to issue instructions to their employees regarding the requirements of the law against discrimination.
Paragraph A (5) requires the corporate respondent and the respondent, Emil Landau, to post copies of the commission’s housing poster.
Paragraph B (1) requires the respondent, John Higgins, to accept and process all applications for housing without regard to race, creed, color or national origin.
In the opinion of the court, the cease and desist order, being nothing more than a restatement of the requirements of the New York State law against discrimination, is appropriate, although the recitation thereof in an order represents surplusage in relation to the existence of the clearly stated provisions of the State law against discrimination.
With respect to the affirmative action directed by the commission’s order, the court notes there is a certain frustration that is apparent with respect to the directions contained therein, since the respondents at the present time allegedly own no housing accommodations, nor are they in possession by way of lease or otherwise of such accommodations. Therefore, the direction that they shall sell, rent or lease such accommodations represents more of a gesture than an accomplishment. Moreover, the court is of the opinion that that part of the order which directs itself to land or commercial space is unwarranted as a specific direction arising out of this case by reason of the fact that the case itself did not involve any such premises, the sole type of aceom *922 modation having been involved in the case, being housing accommodations. Accordingly, the court declines to issue any order with respect to land or commercial space, since no such property was involved in the original proceeding before the State Commission.
With respect to the direction that respondents list housing accommodations, land or commercial space presently available, again the court is of the opinion that any such order should be restricted to housing accommodations, since nowhere in the proceedings before the State Commission for Human Eights were there any allegations or proof taken with respect to discrimination in the case of land or commercial space.
As to the directive that the respondents instruct their agents,’ representatives or employees as to .the requirements and objectives of the law, there is no objection to the inclusion of such provisions, since the whole process of achieving progress in the field of human rights is based more upon education than any other factor. The requirement that copies of the commission poster be displayed in .the respondents’ offices is also approved, although the court questions whether or not such requirement is crucial under the facts of this case. With respect to Paragraph A (6) which requires the respondents to ‘1 make available to the duly authorized representatives of the State Commission for Human Eights, for a period of one year from the date of this order, such information and documents as may be necessary for said Commission to ascertain whether this order is being complied with ” the court observes that this requirement is far too vague and all inclusive and indefinite to warrant the approval of a court of law. Accordingly, the court declines to include such a directive in its order.
With respect to the sole direction applying to the respondent, John .Higgins, which directs that he shall “ accept and process all applications for housing accommodations in the building located at 385 McLean Avenue, Yonkers, New York, or in any other housing subject to the law against discrimination in which he is now or hereafter employed and in which his duties include the receipt of applications of prospective tenants, without regard to race, creed, color or national origin of applicants for housing,” the court approves this direction but underlines the fact that the order issued by the commission as well as the one to be submitted to this court is conditioned upon the said respondent actually having the authority and duty delegated to him by his employer to perform such acts in the first instance.
In view of the foregoing the court grants the relief sought by the petitioner to the extent indicated hereinabove.
*923 A perusal of the proceedings held before the State Commission for Human Rights in the instant case discloses in some instances a substantial lack of concern for the rights of the accused. Although the proceeding before the State Commission was not a criminal proceeding, the court notes that there is a penal provision applicable to the field of human rights in this State which makes it a misdemeanor to disobey the order of the State Commission for Human Rights or to willfully resist, prevent, impede or interfere with the commission or any qf its members or representatives in the performance of duties. It thus becomes abundantly clear that when a complaint is filed against a prospective respondent with the State Commission for Human Rights a procedure is being invoked which could conceivably itself lead to a criminal prosecution or could run parallel to a subsequent or concurrent criminal prosecution. The instant case involves a complaint against two individuals and a corporate respondent. None of the three said respondents in the proceedings before the State Commission were represented by counsel. Moreover, the two individual respondents were called upon to testify by the State Commission. At the time of their being called upon to testify, none of the ordinary safeguards which are afforded to defendants in criminal prosecutions were invoked on their behalf. For example, they were not advised of their right to decline to testify, they were not advised that testimony given by them might conceivably be used in a subsequent criminal prosecution. In addition, an examination of the proceeding indicates a complete lack of appreciation by the said respondents of the seriousness of the charges lodged against them.
The testimony taken before the State Commission presents a sharp conflict between the versions of the original complainants and those of the respondents. The individual respondents both vehemently deny that they had ever committed the discriminatory acts attributed to them by the complainants. They deny making statements which appeared to be clearly discriminatory, as described by the complainants. The hearing before the State Commission thus became primarily a question of credibility, an issue mainly for determination by the hearing Commissioners.
It is apparent that despite this court’s reservations with respect to the expanding scope of administrative inquiries, the determination by the State Commission for Human Rights in this case must be upheld, with the exceptions noted hereinabove.
The court deplores the acts of discrimination as much as the State Commission for Human Rights. But as was stated by Justice Hugo Black “ The crowd moved by noble ideals today *924 can become the mob ruled by hate and passion and greed and violence tomorrow
Perhaps it is time for the Legislature to review the entire field of administrative agency procedures in this State. In the absence of such action by the Legislature, the only means of limiting the broad scope of administrative review is by recourse to the courts to review the decisions and procedures of administrative agencies which involves an expensive tactic not willingly indulged in by more than a handful of litigants.